IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

T. REID THOMAS and
THOMAS BATTERY CO., INC.                                              PLAINTIFFS

V.                                                      CAUSE NO.: 1:10CV10-SA-JAD

JAMES J. THOMPSON, JR.;
NOLAN E. AWBREY;
D. LEON ASHFORD; and
HARE, WYNN, NEWELL & NEWTON, L.L.P                                     DEFENDANTS

MEMORANDUM OPINION

Defendants filed a Motion to Dismiss [20] on March 8, 2010, on the basis of Federal Rules of Civil Procedure 12(b)(6) and 9(b). The Court requested additional briefing on the statute of limitations issue. The briefing is complete and the Court finds as follows:

*Factual and Procedural Background*

In the late 1990's, the law firm of Hare, Wynn, Newell & Newton, L.L.P. (Hare Wynn) instituted several lawsuits against Exide Battery Company (Exide) on behalf of its clients in various states. During the relevant time periods, Defendants Thompson and Ashford were partners in the Hare Wynn law firm. Awbrey was an associate who later became a partner in the Hare Wynn law firm.

On September 4, 1998, Plaintiff Reid Thomas executed an employment agreement with the Hare Wynn law firm for representation in a suit alleging the sale of defective batteries. Plaintiff asserts at that time he wanted to pursue two causes of action: claims that the batteries manufactured at an Exide plant in Greer, South Carolina, were defective (defective battery claim); and claims that Exide fraudulently sold used and recycled batteries as new (fraud claim). The Hare Wynn Defendants filed Plaintiff's complaint in the Chancery Court of Weakley County, Tennessee, on

September 4, 1998. The only claim pursued was the defective battery allegations. Plaintiff's fraud claim was not pursued in the Tennessee action. Plaintiff alleges that in exchange for his agreeing to be lead plaintiff in the Tennessee litigation, Thompson promised him $150,000.

However, a class action lawsuit against Exide Corporation had previously been filed in the United States District Court for the District of South Carolina on July 12, 1998. That action was based on the claim that batteries manufactured at the Exide plant in Greer, South Carolina, were defective. That action did not encompass Plaintiff's claims related to the sale of used and recycled batteries by Exide. Hare Wynn eventually qualified as class counsel for the plaintiffs in the South Carolina action.

While the Tennessee and South Carolina actions were pending, the Hare Wynn firm also represented similarly situated individuals in a Mississippi lawsuit against Exide filed in the Circuit Court of Claiborne County, Mississippi, filed on November 18, 1999. In May of 2000, Plaintiff requested that Hare Wynn include his fraud claims against Exide in the Mississippi action, but his claims were never joined with those prosecuted in the Mississippi case.

The Hare Wynn law firm was also involved in another case against Exide in Alabama that ended in mistrial due to the jury awarding punitive, but no compensatory damages. After the mistrial, a settlement conference commenced on May 15, 2000. Plaintiff alleges that at this conference, all cases prosecuted by Hare Wynn against Exide were settled globally. The global settlement provided for the issuance of coupons to the South Carolina class members to be used over a three year period and provided for a payment to Hare Wynn of $2,100,000 in attorneys fees. The global settlement also included $2.5 million for the settlement of the Mississippi Exide case, an action pending in Pennsylvania, and the Alabama action. The global settlement was conditioned on

dismissal of Plaintiff's action in Tennessee and the South Carolina district court's approval of the Hare Wynn attorneys' fees.

Plaintiff maintains that Defendants never disclosed the amount of the global settlement to the class members. The South Carolina Exide case administrator informed the Plaintiff on December 15, 2000, that he qualified as a class member in the South Carolina Exide case. The Tennessee Exide case was dismissed with prejudice on March 29, 2001. Exide transferred the settlement proceeds to Hare Wynn on April 2, 2001. On that same date, Plaintiff received notice that his credit award based on the settlement entitled him to $759.44 to be applied toward the purchase of Exide batteries over three years. Hare Wynn also paid Plaintiff $5,000 for his role as one of the original class representatives in the Tennessee action. The $5,000 check was negotiated by Plaintiff on April 2, 2001, and was noted as a "client disbursement."

Soon after receiving the $5,000 check, Plaintiff called Thompson to complain about the amount of the settlement and to question Thompson about why the Mississippi plaintiffs received more money for their claims against Exide. Thompson explained to Plaintiff that he agreed to serve as a class representative of the Tennessee action on the last day of the limitations period, had not been called upon to testify, produce documents, or otherwise be actively involved, and that his claim was subsumed by the South Carolina action of which he was not a class representative.

On January 24, 2007, the former plaintiffs in the Mississippi Exide case, all prior clients of Hare Wynn, filed suit against Hare Wynn in the Circuit Court of Hinds County, Mississippi. The basis of that suit is that Hare Wynn breached various legal duties owed to the Mississippi Exide case plaintiffs in its representation of those entities. Plaintiff joined the state court action but was dismissed by Order dated September 4, 2008. The court found that Plaintiff was not a proper party

3

to the lawsuit because he had not been a party in the Mississippi Exide case, therefore, not a part of the eventual settlement of that action.

Plaintiff filed this action in the Circuit Court of Attala County on August 24, 2009, asserting fifteen state law claims against the current Defendants, including legal malpractice, fraud, and misrepresentation. Plaintiff amended his Complaint in February of 2010 and included a violation of RICO against the Hare Wynn Defendants.

*Motion to Dismiss Standard*

In considering a motion under Rule 12(b)(6), the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004) (quoting Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999)). To overcome a Rule 12(b)(6) motion, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); accord Ashcroft v. Iqbal, — U.S. —, 129 S. Ct. 1937, 173 L. Ed. 2d 868, 883-85 (May 18, 2009). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555, 127 S. Ct. 1955 (quotation marks, citations, and footnote omitted). "Conversely, 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court.'" Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007) (citing Twombly, 550 U.S. at 558, 127 S. Ct. 1955) (internal quotation marks omitted)).

The Court reviewed Defendant's initial Motion to Dismiss and determined that further briefing was necessary on the statute of limitations issue. Because the Court has relied on

documentation outside and not attached to the Complaint, the Court will consider the statute of limitations issue under the standard espoused by Federal Rule of Civil Procedure 56. That Rule states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

When considering a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ("the burden on the moving party may be discharged by 'showing'...that there is an absence of evidence to support the nonmoving party's case"). The burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324, 106 S. Ct. 2548 (citing former FED. R. CIV. P. 56(c), (e)).

*Discussion and Analysis*

*Statute of Limitations*

Plaintiff contends that pursuant to Mississippi's discovery rule and fraudulent concealment statute, his claims are not time-barred. Plaintiff's state law claims are premised around the facts existing at the time of the global settlement and Plaintiff's knowledge of the pertinent facts.

It is undisputed that the three year limitations period prescribed in Mississippi Code Section 15-1-49 applies to all state law causes of action. According to that statute, "[a]ll actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after." Miss. Code Ann. § 15-1-49(2). The date the cause of

5

action accrued is at issue here. The Mississippi Supreme Court has applied a discovery rule when "the plaintiff [is] precluded from discovering the harm or injury because of the secretive or inherently undiscoverable nature of the wrongdoing in question," or "when it is unrealistic to expect a layman to perceive the injury at the time of the wrongful act." McCain v. Memphis Hardwood Flooring Co., 725 So. 2d 788, 794 (Miss. 1998). In Channel v. Loyacono, 954 So. 2d 415 (Miss. 2007), two clients sued their attorneys for malpractice in the course of negotiating settlements. The court explained that the "secretive or inherently undiscoverable" standard applies "where there is some piece of physical evidence that is the subject of the test." Id. at 421 (citing Staheli v. Smith, 548 So. 2d 1299, 1303 (Miss. 1989)). The Court explained:

> An attorney is obligated to use skill, prudence, and diligence commonly exercised by practitioners of his profession . . . a corollary to this expertise is the inability of the layman to detect its misapplication; the client may not recognize the negligence of the professional when he sees it.

Id. at 421-22 (citing Smith v. Sneed, 638 So. 2d 1252, 1257 (Miss. 1994)). Moreover, "fraudulent concealment of a cause of action tolls its statute of limitations." Robinson v. Cobb, 763 So. 2d 883, 887 (Miss. 2000) (quoting Myers v. Guardian Life Ins. Co. of America, Inc., 5 F. Supp. 2d 423, 431 (N.D. Miss. 1998)).

Defendants contend that Plaintiff knew of a possible cause of action at least by April 2, 2001, the date he endorsed the $5,000 check. Plaintiff asserts that the limitations period for his causes of action were tolled until 2006 when Defendants' former investigator, Steve Burt, came forward with documentary evidence of Defendants' alleged fraud. After reviewing the briefing, supplementation, and exhibits, the Court finds that the Plaintiff's claims were tolled by the discovery rule and the doctrine of fraudulent concealment.

Plaintiff maintains that upon receiving the $5,000 check from Hare Wynn, he was

6

dissatisfied with the amount. At that time, Plaintiff called Steve Burt who told him to contact Jim Thompson. Thompson indicated that the $5,000 was fair due to Plaintiff's lack of involvement with the case, lack of damages, and position as a representative of an uncertified class. Although Plaintiff felt uneasy about the $5,000 settlement, he undertook the correct steps to get a resolution - he called his attorney. It was not until March of 2006 that Plaintiff was made aware of Defendants' potential fraudulent conduct. Steve Burt approached Plaintiff with documents evidencing some alleged wrongdoing on the part of Defendants concerning the settlement funds. It was on this date that Plaintiff's claims against Defendants accrued.[1]

Accordingly, the three year statute of limitations expired on Plaintiff's state law causes of action on March 3, 2009. Plaintiff's Attala County action was not filed until August 24, 2009. However, on January 24, 2007, Plaintiff joined a Hinds County state court action which he purports was the same cause of action as this case. Plaintiff was dismissed as a party in that suit on September 4, 2008.

Plaintiff contends that his statute of limitations was tolled under Mississippi Code Section 15-1-69 due to his participation in the Hinds County state court lawsuit with the Mississippi Exide Battery litigants. Mississippi Code Section 15-1-69 provides:

> If in any action, duly commenced within the time allowed, the writ shall be abated, or the action otherwise avoided or defeated, by the death of any party thereto, or for any matter of form, or if, after verdict for the plaintiff, the judgment shall be arrested, or if a judgment for the plaintiff shall be reversed on appeal, the plaintiff may commence a new action for the same cause, at any time within one year after the abatement or other determination of the original suit, or after reversal of the

---

[1] The date Steve Burt approached Plaintiff is not certain. The parties have not identified any specific date; however, the record is undisputed that Plaintiff called Jim Thompson in reaction to Steve Burt's revelation on March 3, 2006. Thus, for purposes of calculating the date of accrual, the Court will use this date.

judgment therein, and his executor or administrator may, in case of the plaintiff's death, commence such new action, within the said one year.

Miss. Code Ann. § 15-1-69. Thus, Plaintiff argues, his statute of limitation did not run until one year after his dismissal as a party plaintiff in the Hinds County action. Plaintiff asserts as this Attala County action was filed within that one year, he is saved from the expiration of the statute of limitations.

In the past, the Mississippi Supreme Court has analyzed four elements in deciding whether the savings statute is triggered. The elements are whether: (1) the action has been duly commenced within the applicable statute of limitations, (2) the complaint was filed in good faith, (3) the prior suit was dismissed as a matter of form without adjudication on the merits, and (4) new action was commenced within one year of said dismissal. Crawford v. Morris Transp., Inc., 990 So. 2d 162 170 (Miss. 2008).

Section 15-1-69 requires the "new action" to be "for the same cause," Miss. Code Ann. § 15-1-69, and applies to cases "where the Plaintiff has been defeated by some matter not affecting the merits, some defect or informality, which the Plaintiff can remedy or avoid by a new process." Marshall v. Kansas City So. Rys. Co., 7 So. 3d 210 (Miss. 2009) (quoting Hawkins v. Scottish Union & Nat'l Ins. Co., 69 So. 710, 713 (Miss. 1915)).

Sam Lush, an original Mississippi Exide litigant, filed a state court action against these same Defendants in the Circuit Court of Hinds County. That action was filed on January 24, 2007, within Plaintiff's statute of limitations after application of the discovery rule. Reid Thomas was a named plaintiff therein. The Complaint accuses Defendants of disbursing settlement funds "to clients not part of the Plaintiffs' case in Mississippi." Further, that complaint alleges that Defendants made

fraudulent misrepresentations regarding "the settlement of the Mississippi lawsuit," and in particular, "the amount of the settlement funds regarding the Mississippi lawsuit." Attached to that Complaint is the Mississippi Exide litigation complaint. Reid Thomas is not listed as a plaintiff to the Mississippi Exide litigation. On September 4, 2008, the Circuit Court dismissed Reid Thomas as a party plaintiff as he was not a party to the Mississippi settlement.

Here, Thomas' "new action" is not the "same action" as was filed in Hinds County Circuit Court. A side by side reading of the two complaints proves these two to be completely different causes of action.

The state court complaint's factual basis was premised entirely on the prior Mississippi Exide battery litigation, and Defendants handling of the settlement of that particular case. The allegations included fraudulent misrepresentation regarding the amount of settlement garnered for the Mississippi Exide plaintiffs; a request for an injunction to prevent the alleged fraud "at any time in the future in the state of Mississippi;" and civil conspiracy for depriving Mississippi plaintiffs of settlement monies allegedly owed to them. Each claim "adopts and incorporates by reference all facts asserted in each and every allegation of the Complaint as if fully set forth herein," leading the Court to conclude that the Hinds County action was premised solely on the basis of the Mississippi Exide litigation.

In contrast, this action's complaint is based on the individual, Reid Thomas' class action. Indeed, the Complaint explains the Hinds County action as follows: "The gravanman [sic] of the lawsuit filed by the Lush plaintiffs against Hare Wynn is that Hare Wynn breached various legal duties it owed to the Lush plaintiffs in its representation of the Lush plaintiffs." However, this

9

action includes allegations that the Defendants misrepresented Exide's impending bankruptcy; fraudulently failed to disclose that Thomas was eligible to participate in the Mississippi Exide litigation; civilly conspired to pay Thomas $5,000 without fully prosecuting the Tennessee Exide case; and fraudulently inducing Thomas to be a lead plaintiff in the Tennessee Exide case. Because this "new action" is not the "same action" as was filed in state court, Plaintiff may not have the benefit of the savings statute's tolling effect. See Clark Sand Co. v. Kelly, 2010 Miss. Lexis 94, 28-29 (Miss. Feb. 25, 2010) (where plaintiff had no standing to bring initial suit, i.e., she had no "legally sufficient interest in the suit," savings statute not implicated in second-filed suit).

Furthermore, Plaintiff has put forth no admissible evidence to dispute that he was aware he was not part of the Mississippi Exide litigation at the time the Hinds County lawsuit was filed. See Fed. R. Civ. P. 56(c), (e) (where a party fails to properly address another party's assertion of fact, the court considers the fact undisputed). Even considering the undated transcribed telephone conversations provided by Plaintiff, there is no genuine dispute of material fact. In fact, in one of those conversations, Reid Thomas specifically states to Jim Thompson that the Mississippi plaintiffs got a certain amount of money different than what he received. In another conversation, Thompson explains why the Mississippi plaintiffs were paid more by Exide. Later, Thomas asks, "I got more than anybody else in Mississippi did?" Thompson clearly explains in that same conversation that Reid Thomas was a class member in South Carolina because the Tennessee case was subsumed by that litigation. In fact, Thompson clearly says that he did not file a Mississippi action on Thomas' behalf. In 2006, Thomas sent a letter to Thompson posing questions such as, "Why did you decide to give the Lush clients $10,000 to $15,000 and at the time of disbursement you gave them $35,700.00? How did you arrive at this figure?" Thus, for purposes of the four prong analysis used

by the Mississippi Supreme Court to determine if the savings clause is triggered, Plaintiff did not file or join the Lush action in good faith as he was not a party to the Mississippi Exide settlement.

The Court finds instructive the Fifth Circuit's analysis in Bulley v. Toastmaster, Inc., 86 F. App'x 6, 10 (5th Cir. 2003). There, the Fifth Circuit affirmed the district court's findings that the plaintiff's initial suit was not brought in good faith. Id. The plaintiff sued the wrong defendant in the first suit. The district court found that the plaintiff failed to show good faith in not bringing suit against the subsequent defendant until after the statute of limitations had run. The court noted that the plaintiff knew as early as two years prior to the running of the statute of limitations that the original defendant had not caused the injury in question. Moreover, the plaintiff admitted to knowing the true identity of the rightful defendant prior to dismissal of the first cause of action. Likewise, here, Thomas has not put forth any evidence that he joined the first lawsuit in good faith. Accordingly, Section 15-1-69 does not toll the statute of limitations for Plaintiff , and his state law claims are barred.

*Civil RICO claim*

Defendants claim that Plaintiff has failed to state a claim under RICO, 18 U.S.C. Section 1962(c), (d).[2] With regard to RICO, the Fifth Circuit has stated:

> Reduced to their simplest terms, [RICO subsections 1962(c) and (d)] states that: a person who is employed by or associated with an enterprise cannot conduct the affairs of the enterprise through a

---

[2]Defendants also argue that Plaintiff did not file his RICO action within the four year statute of limitations. The Court rejects this argument. As noted above, Plaintiff's claims were tolled until March 3, 2006. Plaintiff filed this RICO claim in his Amended Complaint on February 5, 2010. Thus, Plaintiff filed within the four year statute of limitations.

> pattern of racketeering activity; and a person cannot conspire to [conduct the affairs of the enterprise through a pattern of racketeering activity.]

Crowe v. Henry, 43 F.3d 198, 204 (5th Cir. 1995).

Defendants contend that Plaintiff has not pled facts sufficient to establish a RICO "enterprise." In the Amended Complaint and RICO Case Statement, Plaintiff alleges the law firm of Hare Wynn is the enterprise in this action.

The existence of an enterprise is an essential element of a RICO claim. 18 U.S.C. § 1962(c); Sedima v. Imrex Co., 473 U.S. 479, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985). The enterprise must be "an entity separate and apart from the pattern of activity in which it engages." Atkinson v. Anadarko Bank & Trust Co., 808 F.2d 438, 441 (5th Cir. 1987). "Moreover, plaintiffs must plead specific facts, not mere conclusory allegations, which establish the enterprise." Montesano v. Seafirst Commercial Group, 818 F.2d 423, 427 (5th Cir. 1987).

Plaintiff described the enterprise as "a limited liability partnership composed of partner and associate attorneys whose purpose, functioning and course of conduct is to prosecute the claims of their plaintiff clients against various defendants." The record here contains no evidence that the law firm engaged in any activities separate and apart from its normal functions. Plaintiff alleges that the law firm "cloaked" the racketeering activity in the day-to-day functions of a law firm in "prosecuting its clients' case, negotiating settlement, and disbursing proceeds from those settlements." However, Plaintiff attempts to delineate the actions of the law firm under the facts in this case by noting that "Defendants devised a scheme to defraud certain of their clients in order to recover unreimbursed expenses for the enterprise that resulted from other failed litigation." The actions involving the law firm were performed in the course of their regular business. See Atkinson, 808 F.3d at 441 (noting

that plaintiffs' mail fraud RICO violation which included mailing of loan statements, was an activity of the bank and thus, not separate and apart from normal functions to constitute an enterprise). Plaintiff wholly failed to establish the existence of any entity separate and apart from the law firm. Thus, there is no enterprise, and Plaintiff cannot sustain the RICO claims against Defendants.

*Conclusion*

Plaintiff's state law claims were not brought within the three year statute of limitations as provided by Mississippi Code Section 15-1-49. Plaintiff has not sufficiently pled a civil violation of RICO. The law firm of Hare Wynn is not an "enterprise" as contemplated by the statute. Defendants' Motion to Dismiss is thus GRANTED, the Plaintiff's claims are dismissed, and this case is CLOSED.

SO ORDERED, this the 20th day of January, 2011.

        **/s/ Sharion Aycock**
        **U.S. DISTRICT JUDGE**